RECEIVED

JUL 2 9 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| NABORS DRILLING USA, L.P. | CIVIL ACTION NO. 08-0738 |
| V. | JUDGE DOHERTY |
| GENEX SERIVCES, INC. | MAGISTRATE JUDGE METHVIN |

## RULING

Currently pending before this court is a "Motion for Review of Magistrate Judge's Order," filed by plaintiff, Nabors Drilling USA, L.P. ("Nabors").[1] [Doc. 29] In the motion, Nabors urges this Court to reverse a Ruling issued by the Magistrate Judge assigned to this matter. More specifically, Nabors moves this Court to reverse the Magistrate Judge's Ruling which denied Nabors' motion for reconsideration. In the motion for reconsideration, Nabors requested the Magistrate Judge "reconsider its Order denying Plaintiff's Motion to Remand." [Doc. 23, p.1] The sole issue addressed by the Magistrate Judge, as well as the parties, was "whether the amount in controversy is sufficient to support federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) [Diversity of Citizenship]." [Doc. 22, p.1] The Magistrate Judge ultimately found "that more likely than not, the amount in controversy at the time of removal was in excess of $75,000...." [Id. at 7] Accordingly, the motion to remand was denied. [Id.]

---

[1] The motion has been docketed by the Clerk of Court as an "Appeal of Magistrate Judge Decision." [Doc. 29]

1

## Procedural History

On May 8, 2008, Nabors filed a petition for damages in the Fifteenth Judicial District Court for the State of Louisiana against Genex Services Inc. ("Genex"). In its petition, Nabors states in pertinent part as follows:

> 3.
> Nabors retained the services of Kenneth Livaudais Claims Service, Inc. (hereinafter, "Livaudais"), a Louisiana corporation domiciled in Lafayette, Lafayette Parish, Louisiana, to administer claims of ill or injured Nabors employees under the Louisiana Workers Compensation Law, La. R.S. 23:1021, et seq. (hereinafter, "LWCL").
>
> ...
>
> 5.
> Livaudais, on behalf of Nabors, engaged Defendant [Genex] to provide cost containment services, which included auditing medical bill reviews and attendant bill adjustments for the medical treatments which were compensable under the LWCL, as well as affording Nabors access to Preferred Provider Organizations (PPOs) accessible to Defendant.
>
> 6.
> Nabors, through Livaudais, relied upon Defendant to perform all acts and adhere to all legal requirements in providing such cost containment services so as to properly determine whether Nabors was entitled to adjust the bills of such providers as a result of membership in PPOs to which the Defendant had legal access, to inform Nabors of the accurate sum due to each such provider and to ensure that each such provider was provided with the appropriate payment for services rendered.
>
> 7.
> Defendant, after conducting such cost containment services, recommended payment amount due to various health care providers which Defendant knew or should have known were below Louisiana's statutory fee schedule for medical services provided to injured workers, thereby subjecting Nabors to complaints of underpayment by said providers and further subjecting Nabors to claims filed by such providers in Louisiana's Office of Workers' Compensation Administration Courts for underpayment of medical bills, penalties, and attorneys' fees.
>
> 8.
> Various providers of medical services have filed claims against Nabors in Louisiana's Office of Workers' Compensation Administration Courts, claiming that

Nabors underpaid medical bills for services rendered to various employees of Nabors who sustained work related illnesses or injuries and received treatment by said providers. These various providers seek the amounts of alleged underpayments, penalties and attorneys' fees.

[Doc. 1-1] Stated more simply, Nabors alleges it hired Livaudais to administer its workers' compensation claims; Livaudais then retained Genex ("on behalf of Nabors") to provide "cost-containment services" for workers' compensation claims filed by Nabors' employees; thereafter, Genex "recommended" incorrect payment amounts to medical providers, resulting in claims for underpayment being filed against Nabors with the Louisiana Office of Workers' Compensation Administration ("OWCA").[2]

In accordance with state law, Nabors did not plead a specific amount of damages in its petition. Nor did Nabors plead, by general allegation, that its damages were less than the amount required for federal diversity jurisdiction, which is required by state law.[3] On May 27, 2008, Genex removed the matter to this court, arguing diversity jurisdiction exists. [Doc. 1-1] On July 24, 2008,

---

[2] In its motion to remand, Nabors identifies four claims filed against it with the Louisiana Office of Workers' Compensation ("OWCA") for "alleged underpayment of injured workers' medical bills." [Doc. 8-2, p.1]

[3] See LA. CODE CIV. PROC. 893A, which provides in pertinent part:

> No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand. The prayer for relief shall be for such damages as are reasonable in the premises except that if a specific amount of damages is necessary to establish ... the lack of jurisdiction of federal courts due to insufficiency of damages, ... a general allegation that the claim exceeds or is less than the requisite amount is required.

Most rulings issued by the United States District Courts sitting in the State of Louisiana have found the failure to include an Article 893A allegation in the state court petition is not, in and of itself, determinative of the amount in controversy. See Lilly v. Big E Drilling Co., 2009 WL 790150 (W.D.La. 2007); Weber v. Stevenson, 2007 WL 4441261 (M.D.La.2007); Berthelot v. Scottsdale Insurance Co. of Arizona, 2007 WL 716126 (E.D.La. 2007); *but see* Bruce v. Fisher, 2006 WL 2505908 (Failure to include allegation the suit is for less than the jurisdictional minimum, as required by LA. CODE CIV. PROC. 893A(1), creates a "strong presumption" in favor of jurisdiction). Defendant has not argued plaintiff's failure to include an 893A allegation creates a presumption in favor of jurisdiction.

plaintiff filed a motion to remand, arguing solely that the amount in controversy in this matter does not exceed $75,000. [Doc. 8] The motion was referred to the Magistrate Judge, who ultimately held "more likely than not, the amount in controversy at the time of removal was in excess of $75,000, and the motion to remand will be denied." [Doc. 22, p.7] Nabors then filed for a motion for reconsideration of that ruling, pointing out after the Magistrate Judge denied the motion to remand, another judge of this district granted a motion to remand in an almost identical suit, also filed by Nabors, and the motion to remand in this matter should be granted for the reasons provided in the other suit.[4] [Doc. 23, p.2 (citing Nabors Drilling USA, LP v. CompTech Group, LLC, 2008 WL 4974587 (W.D.La.) (J. Melançon)] The Magistrate Judge denied the motion for reconsideration, reasoning "[a] different decision by a different Judge in a similar lawsuit is not the type of injustice or extraordinary circumstance contemplated by Fed. R. Civ. P. Rule 60(b)(6)." [Doc. 28, p.3]

Nabors has now filed this appeal, stating in part as follows:

Nabors seeks review of Magistrate Judge Methvin's Order regarding its Motion for Reconsideration of Motion to Remand for the following reasons:

1. Nabors filed its Motion for Reconsideration citing Fed. R. Civ. P. 60 (b) (6) on the basis that obtaining a ruling on an almost identical suit in this Court certainly constitutes "injustice or extraordinary" circumstances when it is now required to litigate two nearly identical claims, one in state court and one in the instant jurisdiction, and this Court is now required to hear one of the matters wherein there is no subject matter jurisdiction.

2. Nabors filed its Motion for Reconsideration citing Fed. R. Civ. P. 60 (b) (6) on the basis that a contrary decision by this Court wherein nearly identical facts to this matter were presented warrants extraordinary circumstances, which should be addressed accordingly

---

[4]The petition in Judge Melançon's case was filed by Nabors in state court on the same day as was the petition in this matter; counsel for Nabors and counsel for both defendants are the same in both matters; the allegations in both petitions are virtually identical, with the exception of the named defendant.

4

by the Magistrate Judge.

For this reason, the Order in question should be reversed, and the matter should be reconsidered per Fed. R. Civ. P. 60 (b) (6).

[Doc. 29-2, pp. 1-2] Later in its brief, Nabors again requests this Court reverse the Magistrate Judge's ruling on the motion for reconsideration, and additionally requests this Court reverse the ruling on the motion to remand. [Id. at 3]

### Standard of Review

Pursuant to FED. R. CIV. P. 72(a), "When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide... [t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Pursuant to FED. R. CIV. P. 72(b), when a pretrial matter which is dispositive of a party's claim or defense is referred to a Magistrate Judge without the consent of the parties, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."

Here, plaintiff appeals the motion for reconsideration of a motion to remand. Whether a magistrate judge's determination of a motion to remand is or is not "dispositive of a party's claim or defense," has been the subject of much debate in the federal courts. Although it appears the Fifth Circuit has not addressed this issue, several district courts within the Fifth Circuit have concluded such a motion is not dispositive, and therefore the standard of review is "clearly erroneous or contrary to law. *See e.g.* City of Jackson, Miss. v. Lakeland Lounge of Jackson, Inc., 147 F.R.D. 122, 124 (S.D.Miss. 1993); Vaquillas Ranch Co., Ltd. v. Texaco Exploration and Production, Inc., 844 F.Supp. 1156 (S.D.Tex. 1994); Dugas v. Jefferson County, 911 F.Supp. 251, 253 (E.D.Tex. 1995); *see also* In re 1994 Exxon Chemical Fire, 558 F.3d 378, 382 (5th Cir. 2009)(noting without

comment, "the remand issue was referred to a magistrate judge [for ruling]"). However, the Court is additionally aware the majority of appellate courts which have addressed this issue have found motions to remand are dispositive, and thus subject to a de novo standard of review. *See e.g.* Williams v. Beemiller, Inc., 527 F.3d 259 (2nd Cir. 2008); Vogel v. U.S. Office Products Co., 258 F.3d 509 (6th Cir. 2001); First Union Mortg. Corp. v. Smith, 229 F.3d 992 (10th Cir. 2000); In re U.S. Healthcare, 159 F.3d 142 (3rd Cir. 1998); *see also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 3068.2 (2009)("By way of contrast, the desire of a party to proceed in federal court cannot reasonably be considered a claim, and therefore rulings on motions to remand removed cases should not be considered dispositive, although the courts have divided on the question. Increasingly, however, courts have viewed remand orders as dispositive.") Due to the foregoing, and out of an abundance of caution, the Court has reviewed the motion for reconsideration de novo, and has found plaintiff's arguments to be unsupported by law. However, following a de novo review of the underlying motion to remand, the Court finds the motion to remand was incorrectly decided, and therefore the motion to remand should be granted.[5]

## Applicable Law

The Court begins with the well-settled rule that "[f]ederal courts are courts of limited jurisdiction having subject matter jurisdiction only over those matters specifically designated by the Constitution or Congress."[6] Johnson v. U.S., 460 F.3d 616, 621, n.6 (5th Cir. 2006). Because federal

---

[5]The Court is aware technically plaintiff has not appealed the motion to remand. Nevertheless, 28 U.S.C. § 1441(c)(Procedure after removal generally) provides in pertinent part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

[6]With regard to diversity jurisdiction, jurisdiction of the federal courts has been further narrowed over time, beginning with Chief Justice Marshall's ruling in Strawbridge, *supra* (interpreting the diversity jurisdiction statute as requiring complete diversity), and later through successive amendments to the

6

courts are courts of limited jurisdiction, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." Coury v. Prot, 85 F.3d 244, 248 (5th Cir.1996). 28 U.S.C. § 1441(a) sets forth the general types of proceedings which may be removed from a state court to federal court. As pertinent to this matter, the statute provides:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Defendant asserts original jurisdiction exists over this matter pursuant to 28 U.S.C. § 1332(a)(1), which grants district courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between ... citizens of different States... ."

When a matter is removed from state to federal court, it is well settled that the removing party bears the burden of showing federal jurisdiction exists, and that removal is proper. Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995). Any ambiguities are to be construed in favor of remand and against removal. Manguno v. Prudential Property and Cas. Ins. Co., 276 F.3d at 720, 723 (5th Cir. 2002). When a matter is removed from a state court such as Louisiana - *i.e.* a jurisdiction which prohibits specific allegations of the numerical value of claimed damages - the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 882 (5th Cir. 2000). The defendant can meet this burden by: (1) demonstrating it is "facially apparent," from the allegations of the state court petition, that the amount in controversy exceeds $75,000; or (2) setting forth "summary

---

diversity jurisdiction statute, each raising the "amount in controversy" required for diversity jurisdiction to exist.

7

judgement type evidence" of facts in controversy that support a finding of the requisite amount. Manguno at 723. "Removal, however, cannot be based simply upon conclusory allegations." Allen at 1335. "[T]he jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." Id. Finally, "if a state statute provides for attorney's fees, such fees are included as part of the amount in controversy." Manguno, 276 F.3d at 273.

## Analysis

Whether the amount in controversy in the instant matter exceeds $75,000 is not "facially apparent" from the state court petition.[7] [Doc. 1-2, ¶ 14] As such, the defendant must show by a preponderance of the evidence, through the use of "summary judgement type evidence," that the amount in controversy exceeds $75,000.

In support of its motion to remand, Nabors submitted copies of the four "Disputed Claim[s] for Compensation," filed by various health care providers with the Louisiana Office of of Workers' Compensation ("OWCA"). [Doc. 8-3] On each of the forms, in the portion which identifies the nature of the claim, the claimant has checked the last box, identified as "Other," and then typed in the blanks that follow: "Underpayment and/or late payment of medical bills; penalties and attorney fees for arbitrary and capricious handling of this claim." One form additionally refers the reader to

---

[7]The Court notes the petition filed with this Court by defendant when this matter was removed is missing the third page - the page upon which the allegation of damages begins. The Court contacted Nabors and obtained a copy of the missing page; however, it appears the record has not been supplemented with same. However, even after a review of the missing portion of the petition, it still is not facially apparent that the amount in controversy exceeds $75,000. The Court additionally notes the third page of the petition contains allegations numbered 10 through 13 (and portions of paragraphs 9 and 14), which appear to assert causes of action for: detrimental reliance; negligence; and breach of contract, specifically, "... defendant has breached its contract with Livaudais, on behalf of Nabors, though [sic] its actions and/or omissions... ." [Petition, p.3, ¶12]

8

"see attached EOB's." No EOB's have been provided to this Court.

In support of its opposition to the motion to remand, defendant has submitted a document containing a "partial listing of claims already processed by GENEX." [Doc. 14, p.4 (emphasis in original)][8] Defendant argues the partial listing shows "the claims in this litigation could number in the hundreds," and that "the amount in controversy easily exceeds $75,000.00 when considering that attorney fees and penalties will be attached to each underpaid claim." [Doc.]

Following a review of the briefing and evidence, the Magistrate Judge found as follows:

> Plaintiff has submitted copies of four workers' compensations claims filed against it by medical providers, and GENEX has submitted a report summary which shows that it has processed over 200 medical provider claims for plaintiff. The plaintiff's petition clearly claims damages arising not only from currently pending actions against it, but for all future claims against it by medical providers due to underpayment caused by GENEX. As calculated above by GENEX, the penalty due for only one underpaid medical bill, one year late, exceeds $18,000. The referenced statute, La. R.S. 23:23:1201(F), however, provides a cap on penalties of either $2,000 or $8,000 per claim, depending on whether the penalty is based on the $50 per day or the 12% provision.
>
> GENEX has submitted evidence that it has processed well over 200 claims for the plaintiff. While plaintiff disputes the relevance of the number of claims processed, it does not dispute defendant's allegation that it processes hundred, if not thousands, of claims for plaintiff a year. It is not clear how many lawsuits will eventually be filed based on underpayment on these claims. However, whether the damages actually exceed $75,000 is irrelevant to the current inquiry, which is whether the amount in controversy, at the time of removal, more likely than not was in excess of $75,000. The plaintiff itself refused, in its proposed joint stipulation, to irrevocably limit its recovery to less than $75,000, reserving for itself the right to amend its petition to seek greater damages if and when more claims were actually filed.
>
> For the reasons given above, the undersigned finds that more likely than not,

---

[8] Although not stated, the Court presumes the partial listing includes only those claims defendant had processed before or at the time of removal. Allen at 1335 ("[T]he jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time.") A cursory review of the 56 page partial listing appears to affirm the foregoing, although the Court has not examined each of the hundreds of dates contained therein.

9

the amount in controversy at the time of removal was in excess of $75,000, and the motion to remand will be denied.

[Doc. 22, pp.6-7]

After conducting a *de novo* review of this matter, the Court finds defendant has not carried its burden of proof and shown, by a preponderance of the evidence, that federal diversity jurisdiction exists over this matter.[9] First, at the time of removal, only four claims had been filed against Nabors in the Office of Workers' Compensation due to alleged underpayment calculations purportedly made by defendant. Neither party has provided this Court with any information as to the amount of underpayment each provider has alleged. Nevertheless, a review of the partial listing of claims processed by GENEX reveals these underpayment amounts could range anywhere from a few dollars, to several thousand. With regard to penalties, it appears that should the medical providers prevail in state court, any penalties imposed cannot exceed $2,000 per claim.[10] Consequently,

---

[9]"A preponderance of the evidence standard ... simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before (he) may find in favor of the party who has the burden to persuade the (judge) of the fact's existence." In re Winship, 397 U.S. 358, 371-71 (1970)(internal quotations omitted).

[10]La. R.S. 23:1201(F) provides in pertinent part as follows:

Failure to provide payment in accordance with this Section ... shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid ..., together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. ... Penalties shall be assessed in the following manner:

...

(4) In the event that the health care provider prevails on a claim for payment of his fee, penalties as provided in this Section and reasonable attorney fees based upon actual hours worked may be awarded and paid directly to the health care provider. *This Subsection shall not be construed to provide for recovery of more than one penalty or*

10

penalties for the four claims filed at the time of removal cannot exceed $2,000 per claim - *i.e.* $8,000 in the aggregate. With regard to attorneys' fees, again, nothing has been provided to the Court whereby it could assess this portion of the amount in controversy.

Second, with respect to future damages, Nabors' allegation reads as follows:

> *Defendant is liable unto Plaintiff for the aforesaid negligence in favor of Plaintiff and for all sums for which Plaintiff may be cast in judgment in the aforementioned claims by medical providers* pending in Louisiana's Office of Workers' Compensation Administration Courts and/or for such claims that may be filed in the future, together with Plaintiff's attorneys' fees and costs for defending such claims, including all court costs contained herein.[11]

[Doc. 1-2, ¶ 14 (emphasis added)] Defendant argues this allegation appears to be a request for declaratory relief, and therefore, "the amount in controversy is the 'value of the right to be protected or the extent of the injury to be prevented.'" [Doc. 14, p.7 (citing Dow Agrosciences, L.L.C. v. Bates, 705 F.2d 727, 729 (5th Cir. 1983)] However, the Court notes plaintiff has neither explicitly, nor implicitly, made a demand for declaratory relief within the body of its complaint or its prayer, as required by both FED.R.CIV.P. 57 and FED.R.CIV.P. 8(a); *see also* Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1155 (5th Cir. 1992). Plaintiff's prayer seeks "judgment in its favor ... for all reasonable sums due herein, together with legal interest thereon, attorney's fees and all costs for these proceedings and all aforementioned proceedings." [Doc. 1-2, prayer] These requests are not equivalent to a prayer for a declaration that GENEX owes plaintiff a defense and/or indemnity for any and all claims filed in workers' compensation court, which allege

---

*attorney fee.*

(Emphasis added). Neither party has addressed subsection (4).

[11] As noted earlier, the entirety of this allegation has not been filed into the record. More specifically, the portion cited above in italics has not been filed into the record.

11

underpayment of a claim processed by GENEX.[12] Accordingly, the Court finds plaintiff has not sought a declaratory judgment with regard to future claims. Considering plaintiff's prayer for an award of future damages as merely a claim for damages rather than a claim for declaratory relief, defendant has again provided this Court with nothing - other than the partial listing of claims - whereby the Court could assess such damages.[13] Moreover, how this Court could assess damages for claims which have neither been asserted nor adjudicated by the workers' compensation court is

---

[12]The Court notes, even had plaintiff properly requested a declaratory judgment in its pleadings, in this matter, from what is currently before the Court, the Court would likely exercise its discretion to decline to hear such a claim. *See* Odeco Oil and Gas Co., Drilling Div. v. Bonnette, 4 F.3d 401, 404 (5th Cir. 1993)("It is well established in this circuit that a court need not provide declaratory judgment relief on request, as this is a matter left to the district court's sound discretion.") At the time of filing, only the four claims noted above had been filed against Nabors in the worker's compensation court. Plaintiff seems to admit, in its petition, that no contract exists between it and GENEX. Rather, plaintiff has based its claim against GENEX in tort, and perhaps, though not abundantly clear, additionally implies it is the third party beneficiary of the contract between GENEX and Kenneth Livaudais Claims Service, Inc., a company Nabors hired "to administer claims of ill or injured Nabors employees under the Louisiana Wokers Compensation Law... ." [Doc. 1-1, ¶4; *see also* ¶ 5 ("Livaudais, on behalf of Nabors, engaged Defendant to provide cost containment services... ."); ¶ 6 ("Nabors, through Livaudais, relied upon Defendant to perform all acts and adhere to all legal requirements in providing such cost containment services... ."); ¶ 12 ("In addition to the above-described breaches of duty to Plaintiff by Defendant, the Defendant has breached its contract with Livaudais, on behalf of Nabors... .")] No party has provided the Court with any written contract. Additionally, it appears, at the time of filing, no determination had yet been made by the Worker's Compensation Court as to whether or not Nabors bore any liability for the four claims for alleged underpayment. [*See* Doc. 1-1, ¶8 ("these various providers seek the amounts of alleged underpayments, penalties and attorneys' fees.")] Until the four claims are adjudicated and Nabors is found liable for underpayments to those four providers, it is impossible for this Court to declare whether or not Nabors is entitled to indemnification from GENEX, particularly where it appears no contract exists between Nabors and GENEX. *See e.g.* American Fidelity & Casualty Company, Inc. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 280 F.2d 453, 457-58 (5th Cir. 1960) ("But we think there was more than ample ground for the exercise of discretion in declining declaratory relief as sought, in the time and manner in which it was sought. The damage suits had never been tried. No one had yet paid or become legally liable to pay. Whether anything will be paid or be legally payable, no one, on this record, yet knows. All that was presented was a question of the defense of these damage suits.") Nabors may yet defeat these four suits, in which case while a defense may be owed, no indemnity would be owed.

[13]Again, the partial listing of claims reveals the claims can vary from a few dollars, to several thousand. However, even these numbers are of little aid to the Court, as they provide no indication of the amount the various health care providers claim they were underpaid. Rather, the listing merely provides the amount charged, and the amount recommended as payment by Genex.

unclear, as there is yet to exist a claim or controversy, and any such claims are not, and may never be, ripe. Accordingly, the Court finds future damages are not recoverable, and even if they were, defendant has failed to carry its burden and show the amount in controversy exceeds $75,000. In sum, the only portion of the amount in controversy that has been shown to some degree of certainty is the potential for $8,000 in penalties. No relevant evidence has been submitted as to the amount various medical providers claim they were underpaid, or the amount plaintiff might recover in attorneys' fees. Accordingly, and keeping in mind all ambiguity must be construed in favor of remand, the Court finds defendant has failed to carry it's burden of proof and show, by a preponderance of the evidence, the amount in controversy exceeds $75,000.

Additionally, the Court notes defendant has not shown there is complete diversity between the parties. *See e.g.* Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (1806). In its Notice of Removal, Genex states it is "a Pennsylvania corporation with its primary place of business located in the State of Pennsylvania." [Doc. 1-1, p.1] Thus, Genex is deemed a citizen of Pennsylvania. As to the citizenship of Nabors, Genex asserts as follows: "Plaintiff is a Delaware limited partnership with its primary place of business located in Houston Texas.... Nabors Drilling USA, L.P.'s general partner is NDUSA Holdings Corp., who, upon information and belief, is a Delaware corporation with its principal place of business located in Houston Texas." [Id. at ¶¶13, 14] A limited partnership is a citizen of every state in which both its general and limited partners are citizens. Carden v. Arkoma Assoc., 494 U.S. 185, 195 (1990)(reversing Fifth Circuit holding which found the citizenship of a limited partnership should be determined by reference to the citizenship of the general, but not the limited, partners); Great Southern Fire Proof Hotel, Co. v. Jones, 177 U.S. 449, 456-57 (1900). In its notice of removal, defendant has set forth only the citizenship of one of

plaintiff's general partners. This does not end the inquiry, as the citizenship of every partner must be established before this Court may exercise jurisdiction. Where Nabors Drilling was formed and where its primary place of business is located is irrelevant to its citizenship, as these concepts apply only to corporations. Logan v. Hit or Miss, LLC, 2009 WL 982620, n.5 (W.D.La.).[14]

## Conclusion

Due to the foregoing, this matter is hereby REMANDED to the 15th Judicial District Court for the Parish of Lafayette, State of Louisiana.

THUS DONE AND SIGNED this 28 day of July, 2009 in Lafayette, Louisiana.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[14]Finally, the Court notes 28 U.S.C. § 1445(c), wherein Congress has decreed as follows: "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." However, the Court recognizes the Fifth Circuit has held the wrongful removal of a state worker's compensation claim is a procedural, rather than a jurisdictional defect, and therefore a motion to remand on that basis must be made within thirty days of the filing of the notice of removal or the objection is waived. Williams v. AC Spark Plugs Division of General Motors Corp., 985 F.2d 783, 786 (5th Cir. 1993). Plaintiff has not argued this issue, and therefore this argument has been waived.

14